UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
  PLAINTIFF,                   )      CASE NO. 2:20-CR-187(2)
                               )
       vs.                     )
                               )
MYKELL REENEESHA UNEEK HAWES,  )
                               )
  DEFENDANT.                   )
_____)

TRANSCRIPT OF PLEA PROCEEDINGS
BEFORE THE HONORABLE NORAH MCCANN KING
UNITED STATES DISTRICT MAGISTRATE JUDGE
FEBRUARY 2, 2022; 2:30 P.M.
COLUMBUS, OHIO
VIA VIDEOCONFERENCE


  APPEARANCES:

  FOR THE PLAINTIFF:
       KENNETH L. PARKER
       United States Attorney
       By:  Peter K. Glenn-Applegate
       Assistant United States Attorney
       303 Marconi Boulevard
       Columbus, Ohio  43215

  FOR THE DEFENDANT:
       Moore & Yaklevich
       By:  William J. Moore, Esq.
       326 South High Street, Suite 300
       Columbus, Ohio  43215




                         - - -


       Proceedings recorded by mechanical stenography,
transcript produced by computer.

2

1      WEDNESDAY AFTERNOON SESSION

2      FEBRUARY 2, 2022

3      – – –

4      THE DEPUTY CLERK:  This is a change of plea hearing,

5  Case Number 2:21-CR-187, the United States of America versus

6  Mykell Reeneesha Uneek Hawes.  Today's date is February the

7  2nd, 2022.

8      THE COURT:  Thank you.  For the record, I'm pleased to

9  recognize Mr. Peter Glenn-Applegate who is participating on

10  behalf of the United States, and Mr. Jeffrey Moore who is

11  participating on behalf of Ms. Hawes who is also participating

12  here today.

13      Ms. Hawes, we're all participating in this hearing by

14  videoconference.  But I want to make sure you know you have a

15  right to appear in person with your attorney if you want to do

16  so.  But, of course, that is a risky thing to do in the era of

17  COVID.  So if you want to go forward by videoconference after

18  having discussed the matter with Mr. Moore, we can do that.

19      Now, I don't think we have a consent to proceed by

20  videoconference on the record, do we?  Mr. Moore, have you

21  talked to Ms. Hawes about that matter?

22      MR. MOORE:  I did talk to her about this.  I think she

23  is ready to proceed in this matter by video is just fine.

24  She's got some other concerns which I'm filing a motion on, but

25  it doesn't concern the plea, Your Honor.

3

1       THE COURT:  Okay.  Ms. Hawes, do you understand that

2   you have a right to appear in the courtroom in person with your

3   attorney?

4       THE DEFENDANT:  Yes, Your Honor.

5       THE COURT:  Do you want to go forward by

6   videoconference here today?

7       THE DEFENDANT:  Yes, Your Honor.  It's fine.

8       THE COURT:  Okay.  I would like -- even though we made

9   the record, I would like to have that consent form on the

10  record.  We have a document that indicates that it's okay with

11  you to proceed at this hearing today by videoconference.

12      Is it agreeable with you, Ms. Hawes, if Mr. Moore signs

13  that consent form on your behalf?

14      THE DEFENDANT:  Yes, that's fine, Your Honor.

15      THE COURT:  Okay.  Mr. Moore, do you have a -- it was

16  attached to the notice of this hearing.

17      MR. MOORE:  Yes, Your Honor.  Hang on one second and I

18  can get that.  Just give me one moment.

19      THE COURT:  Well, you can wait until after the

20  hearing, Mr. Moore.  But I would like to have that on the

21  record.

22      MR. MOORE:  I have one.

23      THE COURT:  Okay.  Thanks.  So we'll get that filed

24  and we'll go forward by videoconference, Ms. Hawes.  If at any

25  time you can't see or hear me or one of the attorneys, get my

4

1   attention.  We'll figure out what the problem is.  If at any

2   time you want to speak privately with Mr. Moore, again, get my

3   attention and we'll make sure you have that opportunity.  Okay?

4          THE DEFENDANT:  Okay.  Thank you, Your Honor.

5          THE COURT:  Now, it's anticipated -- well, first of

6   all, as you know, this case is assigned to Judge Watson.  And

7   it's only Judge Watson who can make a final decision in this

8   case, including deciding whether or not to accept a guilty plea

9   pursuant to this plea agreement.  I can't do that.  The most I

10  can do, if you want to plead guilty in front of me, is make a

11  recommendation to Judge Watson.

12      Now, again, have you talked to Mr. Moore about this

13  issue of pleading guilty in front of me instead of Judge

14  Watson?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Do you want to go forward on a guilty plea

17  in front of me?

18         MR. MOORE:  Your Honor, I explained to my client that

19  just because you're taking the guilty plea does not mean that

20  Judge Watson won't be sentencing her.

21         THE COURT:  That's correct.  That's correct.  Judge

22  Watson will be making all the final decisions in this case.

23  But we can go forward on the guilty plea here today, and I can

24  make a recommendation to Judge Watson on which he'll act and

25  determine whether or not to accept your guilty plea pursuant to

5

1  the plea agreement based upon this hearing today.  So do you

2  want to go forward in front of me on a guilty plea knowing that

3  the most I can do is make a recommendation to Judge Watson?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Okay.  We'll do that.  Again, I'd like to

6  have written consent on the record, and I believe Mr. Moore has

7  such a consent.

8          MR. MOORE:  Yes, Your Honor.  We have all of those

9  papers.

10          THE COURT:  Okay.  Is it agreeable with you,

11 Ms. Hawes, if he signs that consent form on your behalf?

12          THE DEFENDANT:  Yes, Your Honor, it's fine.  He can

13 sign the consent form.

14          THE COURT:  Great.  So, Mr. Moore, I ask you to get

15 those consents filed as soon as possible after this hearing.

16          MR. MOORE:  I understand.  We'll do it this afternoon.

17          THE COURT:  Okay.  Great.  So we'll go forward on the

18 guilty plea, Ms. Hawes, and I expect after the hearing to make

19 a recommendation to Judge Watson.

20          MR. MOORE:  Your Honor?

21          THE COURT:  Yes.

22          MR. MOORE:  Would you explain to her when you say

23 you're making a recommendation, it's a recommendation to accept

24 the guilty plea.  It isn't any other recommendation, correct?

25          THE COURT:  That's correct.  We're only discussing

6

1   here today your guilty plea pursuant to this plea agreement.  I

2   do not have authority to make a final decision on either your

3   guilty plea or the plea agreement.  Those will be up to Judge

4   Watson to make a final decision on both of those issues.  But

5   we'll make the record here today so that he has the basis for

6   making that final decision.  Do you understand?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Is that okay with you, Ms. Hawes?

9           THE DEFENDANT:  That's okay, yes.

10          THE COURT:  Okay.  Well, before any judge, whether

11  it's me or Judge Watson, can accept a guilty plea, the judge

12  has to be confident that the plea is made knowingly and

13  voluntarily and with a full understanding of the consequences

14  of that plea.  Now, in order to make that determination for

15  myself and to allow Judge Watson to make his own determination

16  in that regard, I'm going to be asking you quite a number of

17  questions.

18          You're going to be placed under oath, and that means

19  that your answers to my questions will be made under penalty of

20  perjury.  And should you intentionally make a false statement

21  in answering my questions, you could be charged with another

22  criminal offense such as perjury or making false statements.

23  Do you understand, Ms. Hawes?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  I'm going to ask you to raise your

7

1    right hand, and I'll ask our courtroom deputy to administer the

2    oath.

3            (Defendant sworn.)

4            THE COURT:  What is your full name?

5            THE DEFENDANT:  Mykell Reeneesha Uneek Hawes.

6            THE COURT:  And how old are you, Ms. Hawes?

7            THE DEFENDANT:  Thirty-one.

8            THE COURT:  Where were you born?

9            THE DEFENDANT:  California.

10           THE COURT:  And how much education do you have?

11           THE DEFENDANT:  Some college.

12           THE COURT:  Okay.  Do you have any difficulty reading

13   or writing or understanding what it is you've read?

14           THE DEFENDANT:  No, Your Honor.

15           THE COURT:  Have you ever been treated for a mental

16   illness or an addiction?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  And what sort of treatment have you

19   undergone?

20           THE DEFENDANT:  I've been to AA and a drug program

21   before.

22           THE COURT:  Okay.  And were those therapies court

23   ordered or did you do them voluntarily?

24           THE DEFENDANT:  I've done one voluntarily and two were

25   court ordered.

8

```
1          THE COURT:  Tell me when you last underwent treatment
2    for either alcohol abuse or drug addiction.
3          THE DEFENDANT:  I believe 2013.
4          THE COURT:  So it's been quite a number of years since
5    you've been treated for either of those conditions?
6          THE DEFENDANT:  Yes.  I was going to programs in here
7    but -- like an outpatient facility, like 2013, 2014.
8          THE COURT:  Okay.  Do you suffer from any other
9    medical condition that requires treatment whether it's a
10   physical condition or a mental condition?
11         THE DEFENDANT:  I have like rheumatoid arthritis.  I
12   don't know if you mean that.
13         THE COURT:  Sure.  Do you take medication for that
14   condition?
15         THE DEFENDANT:  Before I got arrested, I was taking
16   Prednisone and different pain pills.  And I'm trying to get the
17   doctors to prescribe me -- I'm sorry.  What did you say, Your
18   Honor?
19         THE COURT:  So you're not taking any of that
20   medication now?
21         THE DEFENDANT:  Yes.
22         THE COURT:  That's correct?
23         THE DEFENDANT:  Yes, ma'am, I am.
24         THE COURT:  Oh, you are taking medication?
25         THE DEFENDANT:  Yes.
```

1      THE COURT:  Has it been prescribed for you?  Are you

2  taking the Prednisone for your rheumatoid arthritis?

3      THE DEFENDANT:  I just got off the Prednisone maybe

4  two weeks ago because the doctor in here, she doesn't want to

5  give it to me long term.  So she's been tapering it.  So I did

6  it for like a month.  She stopped me on it.  But I'm still

7  taking the Methotrexate I think it is.

8      THE COURT:  Okay.  So are you taking it as it's been

9  prescribed for you?

10      THE DEFENDANT:  Yes, ma'am.

11      THE COURT:  Are you taking any other medication while

12  you're incarcerated?

13      THE DEFENDANT:  No, ma'am.  Just like vitamins.  She

14  has me on a multivitamin and an iron pill.

15      THE COURT:  Okay.  Let me ask you this.  Does either

16  the condition of rheumatoid arthritis or your history of

17  alcohol and drug addiction or the medications that you take, do

18  they interfere at all with your ability to discuss this case

19  with Mr. Moore?

20      THE DEFENDANT:  No, Your Honor.

21      THE COURT:  Are you able to understand everything that

22  Mr. Moore tells you about this case?

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  Within the past 24 hours, other than the

25  medications that have been prescribed or given to you by the

10

1  jail officials, have you taken any other medicine, drugs,

2  pills, or alcohol?

3       THE DEFENDANT:  No, Your Honor.

4       THE COURT:  Mr. Moore, do you have any doubt as to

5  Ms. Hawes' competence?

6       MR. MOORE:  No, Your Honor.

7       THE COURT:  Well, Ms. Hawes, as you know --

8       MR. MOORE:  No, Your Honor.

9       THE COURT:  -- the indictment charges you with three

10  counts of violenting federal law.  Count 1 charges a conspiracy

11  to possess with intent to distribute controlled substances, and

12  Count 2 charges conspiracy to commit money laundering.  And

13  both of those counts refer to the period of time extending from

14  about 2014 to about 2018.

15       Count 3 charges aggravated identity theft, and it refers

16  to the date of April 26, 2017.

17       Now, the indictment also includes forfeiture provisions

18  by which the government seeks the forfeiture of any interest

19  that you have in otherwise unspecified proceeds or instruments

20  used in the commission of the charged offenses.

21       Now, do you understand the nature and meaning of all of

22  those charges against you?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  Have you told Mr. Moore everything you

25  know about this case?

11

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you believe Mr. Moore is familiar with

3     all the facts and circumstances on which these charges are

4     based?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Has your lawyer fully advised you as to

7     the nature and meaning of these charges and any defense that

8     you might have to these charges?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Are you satisfied with his advice and

11     representation?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Now, it's anticipated that you will plead

14     guilty to Counts 1 and 2 of the indictment.  Every criminal

15     offense has certain basic facts or essential elements that the

16     government would have to prove by admissible evidence beyond a

17     reasonable doubt before a person could be convicted on that

18     charge at trial.

19          Now, in this case, as it relates to those charges which

20     it's expected you'll plead guilty -- that is Counts 1 and 2 --

21     those basic facts are these.  First, the government -- as to

22     Count 1, the drug conspiracy charge, the government would have

23     to prove that two or more persons conspired, or agreed, to

24     possess with the intent to distribute oxycodone, a Schedule II

25     controlled substance under federal law.  The government would

12

1   also have to prove that you knowingly and voluntarily joined

2   that conspiracy.  And the government would have to establish

3   that this crime occurred, at least in part, in the Southern

4   District of Ohio during the period or approximately the period

5   charged in the indictment.

6           Now, as to Count 2, the money laundering conspiracy

7   count, the government would have to prove these facts beyond a

8   reasonable doubt.  First, that two or more persons conspired,

9   or agreed, to commit the crime of money laundering, and that

10  you knowingly and voluntarily joined that conspiracy.  And

11  again, the government would have to establish that this

12  conspiracy occurred, at least in part, in the Southern District

13  of Ohio during that specified time period.

14          Now, do you understand that that's what the government

15  would have to prove by admissible evidence beyond a reasonable

16  doubt before you could be convicted on these charges at trial,

17  Ms. Hawes?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Now, if Judge Watson accepts your guilty

20  plea pursuant to this plea agreement, he will be determining

21  all the sentencing terms.  But the statutes governing these

22  charges authorize maximum possible penalties as to each of

23  these counts.  As to the drug conspiracy count, the maximum

24  possible sentence that could be imposed is a term of

25  imprisonment of up to 20 years.  And any term of imprisonment

1    on that count could be followed by a term of supervised release

2    of at least three years.  Conviction on that drug conspiracy

3    charge could also result in a fine up to one million dollars

4    and would require the payment of a 100-dollar special

5    assessment.

6         Conviction on the money laundering conspiracy count is

7    punishable, again, by a term of -- maximum term of imprisonment

8    of up to 20 years.  And any term of imprisonment imposed on

9    that count could be followed by a term of supervised release of

10   up to three years.  Conviction on this count is -- could result

11   in a fine of up $500,000 or two times the value of the property

12   involved in the money laundering count, whichever is greater:

13   five hundred thousand or two times the property involved.

14        Conviction on Count 2 would also require the payment of

15   a 100-dollar special assessment.  And conviction on either or

16   both of these counts could also result in the forfeiture of any

17   interest that you have in either the proceeds of the crimes or

18   in the instrumentalities used in the commission of the crimes.

19        Do you understand that that's the maximum penalty that

20   could be imposed if your guilty plea on these counts is

21   accepted by Judge Watson?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And again, we'll be talking in just a

24   moment about how Judge Watson will determine an appropriate

25   sentence.  But those are the maximum penalties that could be

1    imposed on each of these counts.  And do you understand that

2    Judge Watson could impose the maximum penalty on each of those

3    counts?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Do you understand that he could impose the

6    penalty on each count to be served consecutively, that is, the

7    sentence on one count not beginning until the complete service

8    on the other count?  Do you understand that?

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Do you understand that if he accepts your

11   guilty plea pursuant to this plea agreement, he could impose

12   the same penalty as though you had persisted in your earlier

13   plea of not guilty on these counts, had stood trial and had

14   been convicted by a jury?  Do you understand that?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  Do you understand that these are serious

17   felony charges, and that if your guilty plea is accepted, this

18   could deprive you of valuable civil rights as a citizen of the

19   United States such as the right to vote, the right to hold

20   public office, the right to serve on a jury, the right to

21   possess a firearm?  Do you understand that?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Now, as I told you, this plea agreement

24   leaves all the sentencing terms up to Judge Watson.  But let's

25   talk a little bit about how he will determine a sentence in the

15

1    case.

2         First, I want to define a term that I used.  I told you

3    that any term of imprisonment could be followed by a term of

4    supervised release.  Now, supervised release is a period of

5    supervision by the probation office.  It begins after the

6    complete service of any term of imprisonment.  And a violation

7    of supervised release could result in a new, additional period

8    of imprisonment for up to the full term of supervised release

9    and without credit for time already served in prison or on

10   supervised release.

11        Moreover, if supervised release is revoked and a new

12   term of imprisonment is imposed, that new term of imprisonment

13   could itself be followed by yet a new term of supervised

14   release.  Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Now, Judge Watson will be determining the

17   sentence in this case if he accepts your guilty plea pursuant

18   to this plea agreement.  And in determining that sentence, he

19   will be considering the sentencing guidelines as well as

20   departures or variances from those guidelines as some among the

21   many factors that he will be considering in determining an

22   appropriate sentence in this case.  Now, those sentencing

23   guidelines aren't binding on Judge Watson, but he must consider

24   them.

25             Have you and Mr. Moore talked about the sentencing

16

1    guidelines?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Do you understand that it is Judge Watson

4    who will be determining the guidelines, but that will be after

5    the preparation of the presentence report and after you and the

6    government have had a chance to object to the presentence

7    report?  Do you understand that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Now, I know in this plea agreement you and

10   the government have agreed to or have stipulated to certain

11   facts relevant to the guidelines.  But do you understand that

12   Judge Watson isn't bound by that stipulation or agreement?

13   Instead, he will determine for himself, with the aid of the

14   presentence report, what facts are relevant to the guidelines

15   and to your sentence.  Do you understand that?

16           THE DEFENDANT:  Yes.  Yes, Your Honor.

17           THE COURT:  Now, even after it's been determined what

18   guideline applies to a case, a federal judge has the authority

19   in some circumstances to impose a sentence that is lighter or

20   less severe than the sentence suggested by the guidelines, or,

21   on the other hand, a sentence that is greater or more severe

22   than the sentence suggested by the guidelines.  Do you

23   understand that?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Do you understand that if the sentence

1  that Judge Watson imposes is greater or more severe than the

2  sentence you were expecting, you will still be bound by your

3  guilty plea?  You will have no right to withdraw it on that

4  basis.  Do you understand that?

5       THE DEFENDANT:  I'm sorry.  Can you repeat that one?

6  The video threw me.

7       THE COURT:  Do you understand that if the sentence

8  that Judge Watson imposes is greater or more severe than the

9  sentence you were expecting, you will not be allowed to

10  withdraw your guilty plea on that basis?  You will still be

11  bound by your guilty plea.  Do you understand that?

12       THE DEFENDANT:  Yes, Your Honor.

13       THE COURT:  Do you understand that if Judge Watson

14  accepts your guilty plea pursuant to this plea agreement, it

15  also means that you will have given up your right to appeal

16  from or to challenge your conviction and sentence under almost

17  all circumstances?  This plea agreement permits an appeal from

18  or a challenge to your conviction and sentence only if the

19  sentence that Judge Watson imposes is greater or more severe

20  than the sentence -- the maximum sentence I told you about.

21       Now, you always have a right to appeal from or to

22  challenge your conviction and sentence if you want to pursue a

23  claim of ineffective assistance of your counsel or misconduct

24  on the part of the prosecutor.  But apart from those very

25  limited claims, this plea agreement does not permit an appeal

18

1  from or a challenge to your conviction and sentence.  Do you

2  understand that, Ms. Hawes?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  Now, under the Constitution and laws of

5  the United States, you have the right to persist in your

6  earlier pleas of not guilty to these charges.  You have the

7  right to be tried by a jury.  And at a speedy and public trial,

8  you would have the right to the assistance of your counsel.

9  You would have the right to present a defense and to present

10  evidence in support of that defense if that's what you choose

11  to do.

12         You would have the right to confront and cross-examine

13  the witnesses who testify against you.  You would have the

14  right to require the attendance of witnesses to testify for

15  you.  And you would have the right to testify in your own

16  defense or to remain silent at trial without any penalty

17  whatsoever.  And at a trial you would be presumed innocent

18  unless and until the government is able to prove your guilt by

19  admissible evidence beyond a reasonable doubt.

20         Now, do you understand that if you plead guilty, you

21  give up all of those trial rights, Ms. Hawes?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Do you understand that if you plead

24  guilty, there won't be a trial in your case because by pleading

25  guilty, you're giving up your right to trial?  Do you

1    understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you understand that if you plead

4    guilty, you will also have to give up your right not to

5    incriminate yourself because you will have to admit your guilt

6    to these crimes?  Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Now, we've talked a little bit about the

9    plea agreement.  Plea agreements are proper, but you and the

10   attorneys must disclose all of the terms of the plea agreement.

11        Mr. Glenn-Applegate, can I ask you to summarize those

12   terms, please?

13        MR. GLENN-APPLEGATE:  Thank you, Your Honor.  The plea

14   agreement is filed at ECF Document Number 78 and these are its

15   essential terms.  Ms. Hawes agrees to plead guilty to Count 1

16   of the indictment in this case which charges her with

17   conspiracy to possess with the intent to distribute and to

18   distribute controlled substances, and Count 2 which charges her

19   with conspiracy to commit money laundering.  She understands

20   the elements are those the Court has recited here this

21   afternoon, and the penalties are those the Court has recited

22   here this afternoon.

23        At this point I'd like to pause to make a clarification.

24   Count 1 of the indictment is a drug conspiracy count.  And it

25   charges a co-defendant of Ms. Hawes, Mr. Moore, with

20

1  distributing -- possessing with intent to distribute 500 grams

2  or more of a detectable amount of methamphetamine, whereas it

3  charges Ms. Hawes, Mr. Moore, and another co-defendant,

4  Ms. Casey, with conspiracy to distribute oxycodone.

5      It was the United States' intention to charge Ms. Hawes

6  with a zero to 20 offense, and perhaps more importantly for

7  today's proceeding, it was both parties' intent that she would

8  be pleading guilty to an offense with a statutory maximum term

9  of imprisonment of 20 years and no statutory minimum term of

10  imprisonment.

11      With that clarification --

12      THE COURT:  Mr. Moore, do you have any objection to

13  that clarification?  And is it your understanding that that is

14  the agreement of the parties?

15      MR. MOORE:  Yes, Your Honor.

16      THE COURT:  You have no objection to that

17  clarification; is that correct?

18      MR. MOORE:  No, Your Honor.  That's correct.

19      THE COURT:  Thank you.

20      MR. GLENN-APPLEGATE:  Moving on from the penalties,

21  Your Honor, Ms. Hawes understands that she has, and by pleading

22  guilty gives up the rights that the Court has recited here

23  today.  She understands that if she is not a U.S. citizen or is

24  a naturalized citizen, there may be immigration consequences to

25  her guilty plea.

1          The parties agree to the statement of facts set forth in

2   Attachment A and incorporate it.  They also agree -- while the

3   United States does not oppose a two-level reduction for

4   acceptance of responsibility, as long as Ms. Hawes continues to

5   accept responsibility through sentencing, then Ms. Hawes may

6   also be entitled to an additional one-level decrease based on

7   her timely notification of her intention to plead guilty.  The

8   parties reserve the right to argue at sentencing the

9   application of any other upward or downward adjustments for

10  departures.

11          Ms. Hawes agrees to forfeit the proceeds of Count 1 of

12  the indictment.  She also agrees to forfeit any property

13  involved in Count 2 of the indictment, and she agrees to

14  certain terms in furtherance of her forfeiture obligations.

15          The United States will not further prosecute Ms. Hawes

16  for conduct prior to the date of this plea agreement that was

17  part of the same course of criminal conduct described in the

18  indictment and that was known to the U.S. Attorney's Office at

19  the time it was executed.  The United States Attorney's Office

20  also agrees to dismiss any remaining counts of the indictment

21  against Ms. Hawes at the time of entry of the final judgment.

22          There is a waiver of appeal, Your Honor, which I'll read

23  verbatim.  "In exchange for the concessions made by the U.S.

24  Attorney's Office in this plea agreement, the defendant waives

25  the right to appeal the conviction and sentence imposed, except

22

1    if the sentence imposed exceeds the statutory maximum.  The

2    defendant also waives the right to attack her conviction or

3    sentence collaterally, such as by way of a motion brought under

4    28 U.S.C. Section 2255 or 18 U.S.C. Section 3582.  However,

5    this waiver shall not be construed to bar a claim by the

6    defendant of ineffective assistance of counsel or prosecutorial

7    misconduct."

8         Ms. Hawes waives any rights that she may have under the

9    Hyde Amendment or the Privacy Act of 1974 related to this case.

10   She understands the serious consequences of violating the plea

11   agreement.

12        The plea agreement is signed by myself, Mr. Moore, and

13   Ms. Hawes on Page ID 522.  And along with attachments to the

14   plea agreement, those are its essential terms.

15        THE COURT:  Thank you.  Mr. Moore, is that your

16   understanding of the plea agreement?

17        MR. MOORE:  It is, Your Honor.

18        THE COURT:  And have all formal plea offers been

19   communicated to Ms. Hawes?

20        MR. MOORE:  They have.

21        THE COURT:  Ms. Hawes, did you understand that summary

22   of the plea agreement?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  And you understand that this plea

25   agreement includes that appellate waiver that we discussed and

23

1    that was included in Mr. Glenn-Applegate's summaries.  You

2    understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  You understand that this plea agreement

5    also includes your agreement to forfeit any proceeds and

6    property used in the commission of these offenses.  Do you

7    understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  I'm looking at a copy of the plea

10   agreement.  Do you remember, Ms. Hawes, did you sign the plea

11   agreement?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Before you signed it, had you read the

14   entire plea agreement and any attachment?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Had you discussed it with Mr. Moore before

17   you signed it?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Did you understand all of the terms of the

20   plea agreement and any attachment before you signed it?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  You agree with those terms?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Has anyone made any other or different

25   promises or assurances of any kind that aren't contained in the

24

1    plea agreement?

2            THE DEFENDANT:  No, Your Honor.

3            THE COURT:  Have you been subjected to threats or

4    force of any kind that cause you to plead guilty?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  Is your decision to plead guilty your own

7    free and voluntary act?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Well, as I said earlier, decision on

10   whether or not to accept this plea agreement is left for Judge

11   Watson's determination.

12           Now, in determining whether or not to accept your plea

13   of guilty, Judge Watson will also have to determine for himself

14   that there's a factual basis for your plea of guilty.  And

15   there is a statement of facts attached to this plea agreement.

16           Did you sign the statement of facts?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Before you signed it, had you read the

19   entire statement of facts?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Had you discussed it with Mr. Moore before

22   you signed it?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Did you understand that statement of

25   facts?

25

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you agree with that statement of facts?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Are you pleading guilty to these charges

5    because you are, in fact, guilty of the drug conspiracy charge

6    and the money laundering conspiracy to commit money laundering

7    charge in Counts 1 and 2 of the indictment?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Then, in light of everything I've told you

10   about your rights, Ms. Hawes, and in light of all of my

11   questions, let me ask you, how do you now plead to Counts 1 and

12   2 of the indictment?

13         THE DEFENDANT:  Guilty.

14         THE COURT:  All right.  Your guilty plea has been

15   recorded.  Based on our discussion here today and my

16   observation of you, I'm going to recommend that your guilty

17   plea be accepted.  I expect to issue that recommendation yet

18   today.  The parties will have 14 days to object to my

19   recommendation, but their failure to object could result in a

20   waiver of their right to appeal Judge Watson's adoption of my

21   recommendation.

22      Mr. Moore, is there any objection to beginning the

23   preparation of the presentence report in advance of Judge

24   Watson's action on my recommendation?

25         MR. MOORE:  No, Your Honor.

1        THE COURT:  Ms. Hawes, during that process, you're

2   going to be asked to provide information relevant to the

3   sentence in this case.  Mr. Moore can assist you throughout

4   that process.  You'll have an opportunity, with his help, to

5   object to any of the findings or conclusions of the probation

6   officer with which you disagree.  And he will be able to

7   present evidence or argument at the time of sentencing if

8   there's still some unresolved objections.

9        Now, Ms. Hawes was previously ordered detained in the

10  custody of the marshal, and she does remain in the custody of

11  the marshal.

12       Mr. Glenn-Applegate, on behalf of the United States, any

13  objection to these proceedings?  And is there anything further

14  we can do on behalf of the United States?

15       MR. GLENN-APPLEGATE:  No objection and nothing further

16  on our behalf.  Thank you, Your Honor.

17       THE COURT:  Mr. Moore, any objection on behalf of

18  Ms. Hawes to these proceedings, and anything further we can do

19  on behalf of Ms. Hawes?

20       MR. MOORE:  No, Your Honor.  But Ms. Hawes would like

21  my assistance and my presence with any interviews that she is

22  going to have with the presentence people.

23       THE COURT:  And I'm certain that's perfectly

24  acceptable.  So, if you've not already contacted the probation

25  office, you can contact them and set up those interviews.

27

1          MR. MOORE:  Yes, Your Honor.

2          THE COURT:  There being nothing further, then, I'll

3     ask the clerk to recess the court, please.

4        (Proceedings concluded at 3:10 p.m.)

5                            –  –  –

1                         C E R T I F I C A T E

2

3           I, Shawna J. Evans, do hereby certify that the

4    foregoing is a true and correct transcript of the proceedings

5    before the Honorable Norah McCann King, Magistrate Judge, in

6    the United States District Court, Southern District of Ohio,

7    Eastern Division, on the date indicated, reported by me in

8    shorthand and transcribed by me or under my supervision.

9

10

11                                 s/Shawna J. Evans_____
                                   Shawna J. Evans, RMR, CRR
12                                 Official Federal Court Reporter

13

14                                 May 2, 2022

15

16

17

18

19

20

21

22

23

24

25