```
               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION


UNITED STATES OF AMERICA,    )
                             )
  PLAINTIFF,                 )   CASE NO. 2:20-cr-187(2)
                             )
        vs.                  )
                             )
MYKELL RENEESHA UNEEK HAWES, )
                             )
  DEFENDANT.                 )
_____)


        TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
          BEFORE THE HONORABLE MICHAEL H. WATSON
             TUESDAY, JUNE 14, 2022; 3:00 P.M.
                    COLUMBUS, OHIO

 FOR THE PLAINTIFF:
     Kenneth L. Parker
     United States Attorney
     By:  Peter K. Glenn-Applegate
     Assistant United States Attorney
     303 Marconi Boulevard, Suite 200
     Columbus, Ohio 43215

 FOR THE DEFENDANT:
     Moore & Yaklevich
     By:  W. Jeffrey Moore, Esq.
     326 South High Street, Suite 300
     Columbus, Ohio 43215
                              - - -

   Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

LAHANA DUFOUR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
85 MARCONI BOULEVARD
COLUMBUS, OHIO 43215
614-719-3286

2

```
 1                         Tuesday Afternoon Session
 2                             June 14, 2022
 3                                 - - -
 4           THE COURT:  This is the United States versus Mykell
 5   Reeneesha Uneek Hawes, 20-cr-187.  Mr. Glenn-Applegate for the
 6   government.  Mr. Moore for the defendant.
 7           So there's an issue about the factual basis for this?
 8   What's the deal?
 9           MR. MOORE:  My issue is, Your Honor, that we had a
10   plea hearing.  The government expounded as to what my client
11   was pleading to regarding oxycodone and also expounded that her
12   co-defendant was involved in the methamphetamine.  Also
13   involved here is the fact that there were two or three other
14   co-defendants that worked independently from my client with
15   this particular main person and she was never around for those
16   things and had nothing to do with it and didn't even know what
17   they were doing.
18           So my feeling is, is that she's getting basically made
19   to accept the fact that there are -- that she did more things
20   than she was responsible for.  And relevant conduct, according
21   to the case law that I could read, is that she has to know of
22   it and be involved in it or see that as a consequence of that.
23   And if you're not around when people are making plans that
24   you're not involved with, I don't know how that could be, and
25   she's being made responsible for a large amount of drugs that
```

1  were not her responsibility nor within her knowledge.

2  THE COURT: Mr. Glenn-Applegate, did she not plead to
3  a conspiracy?

4  MR. GLENN-APPLEGATE: She did, Your Honor. I may be
5  able to provide some useful context for this matter.

6  THE COURT: Thank you.

7  MR. GLENN-APPLEGATE: Ms. Hawes was charged in a
8  multidefendant indictment. As is common in a multidefendant
9  indictment, not all defendants were charged with all the same
10 acts. So at the time of the Indictment, which was October of
11 2020, Mr. Moore -- and by Mr. Moore, I mean Michael Moore, not
12 defense counsel -- Ms. Hawes and Brandy Casey were charged with
13 oxycodone related acts and Mr. Michael Moore was charged with
14 methamphetamine related acts as well.

15 The practical effect of that was Michael Moore was
16 charged with an offense with a mandatory minimum of ten years
17 in prison and a maximum of life. The other defendants were no
18 mandatory minimum and a maximum of 20 years.

19 By the time Ms. Hawes entered a plea agreement, which
20 was approximately 15 months later, the United States had
21 sufficient evidence to attribute methamphetamine to Ms. Hawes.
22 Part of plea negotiations was that we would keep the original
23 Indictment which charged her with a 0 to 20 offense and
24 Ms. Hawes would agree to certain methamphetamine related acts
25 for guidelines purposes.

4

1  Mr. Moore, defense counsel and I, I should say, had
2  extensive plea negotiations. We edited the statement of facts
3  multiple times. The last email that I sent to Mr. Moore, we
4  had discussed interlineating the statement of facts to make
5  edits. And I said I would prefer that Ms. Hawes sign a plea
6  agreement where it's crystal clear to the Judge what she's
7  agreeing to and so I, instead of interlineating, sent an edited
8  statement of facts. That's the document that Ms. Hawes and
9  Mr. Moore signed. In that document, she agrees to certain
10 methamphetamine related acts.
11      When we appeared virtually before Magistrate Judge King,
12 Magistrate Judge King indicated that she wanted to clarify on
13 the record whether Ms. Hawes was pleading to a 0 to 20 offense
14 or a 10 to life offense. That conversation -- when she said
15 that, that was before the record was being taken.
16      I said that I would clarify, and in the plea hearing I
17 did so. When I was describing the plea agreement, and this
18 starts on page ID 713 and goes into 714, I clarified that
19 Ms. Hawes was charged with a 0 to 20 offense and that it was
20 the parties' intent that she would be pleading to a 0 to 20
21 offense. That, of course, has a benefit to her because if her
22 guidelines come out above 20 years, which currently they do,
23 there would be a statutory cap on what she could receive. So I
24 clarified that for the purposes of what she is charged with, it
25 was a 0 to 20 offense.

5

1        The hearing went on from there. And in that hearing,
2   the Court asked Ms. Hawes about the statement of facts. This
3   is now on page ID 718 spilling over into 719.
4        Ms. Hawes indicated that she signed the statement of
5   facts, that she had read the entire statement of facts, that
6   she discussed it with counsel before she signed it, that she
7   understood it, and that she agreed with it. That statement of
8   facts, which is in document 78, page ID 553 and 554, includes,
9   among many other agreements, that Ms. Hawes was involved in the
10  distribution of at least 3,114 grams of methamphetamine that
11  was approximately 98 percent pure. In other words, was ice.
12       So she agreed under oath in the plea hearing that she
13  agreed to that and other agreements. There was no objection
14  raised to anything in the statement of facts at the plea
15  hearing.
16       The initial PSR indicates that Ms. Hawes met with the
17  probation officer with counsel and at that time she indicated
18  in her acceptance of responsibility statement that the
19  statement of facts was accurate. Now that the initial PSR has
20  come out and the guidelines numbers are quite high, this
21  argument is presented, it seems, to get the methamphetamine out
22  of the PSR.
23       We would be happy at sentencing to prove what Ms. Hawes
24  has already agreed to but the key point here is she already
25  agreed to 3,114 grams of ice and it is properly attributed to

```
 1   her.  Thank you, Your Honor.
 2            THE COURT:  Jeffrey.
 3            MR. MOORE:  Your Honor, do you have the transcript in
 4   front of you?
 5            THE COURT:  No.  What I have is the Attachment A to
 6   the plea agreement.
 7            MR. MOORE:  May I approach the bench with the
 8   transcript so you can see what was said?
 9            THE COURT:  Sure.
10            MR. MOORE:  It starts at the bottom of that page and
11   goes through the next.
12            THE COURT:  And this is the proceeding before
13   Magistrate Judge King?
14            MR. MOORE:  That's correct, Your Honor.
15            MR. GLENN-APPLEGATE:  Yes, Your Honor.
16            THE COURT:  This says 500 grams or more of a
17   detectable amount of methamphetamine.
18            MR. MOORE:  But it also says that was Mr. Moore's --
19   what Mr. Moore was charged with.
20            THE COURT:  Yes, that's correct.  I'll keep reading.
21         The parties agree to the statement of facts set forth in
22   Attachment A and incorporate it.  Attachment A says 3,114 grams
23   of methamphetamine, ice.
24            MR. MOORE:  Your Honor, if I may.
25            THE COURT:  Am I missing something?
```

7

1         MR. MOORE: At the time, the whole reason the
2 clarification was put on there was not just because it was a 0
3 to 20, it's because I had reservations about the
4 methamphetamine amount. And I was told that would be cured.
5 And then we were -- that's why that rendition of who was
6 charged with what is partially put on there.
7         And I would never agree that she did all that -- was
8 responsible for all that methamphetamine. And that's why at
9 the time that was read.
10        I'm not saying that she can't be responsible for some
11 methamphetamine, but certainly not all that amount. And what I
12 believe we agreed to was the oxycodone, which was plenty to
13 begin with. And I believe that was a clarification of the plea
14 agreement as to the statement of facts, et cetera.
15        THE COURT: All right. I'm going to have to read all
16 this. I haven't had the opportunity to read the transcripts
17 yet. And I'm going to have to get back with you.
18        MR. MOORE: That's fine.
19        THE COURT: Do we have an agreement?
20        MR. MOORE: It's just my understanding that she should
21 be responsible for the things she knew about, was involved in,
22 and/or was foreseeable to her. And if he's doing things with
23 other people, although in the conspiracy, that she didn't know
24 about or she wasn't privy to then she shouldn't be charged with
25 that because that's not relevant conduct and there's plenty of

```
 1  case law.
 2          THE COURT:  Sounds an awful lot like Shawn Nelms,
 3  Charles Carson.
 4          MR. MOORE:  This sounds swell.
 5          THE COURT:  Some other people who have had similar
 6  arguments.
 7       Let me take a look at it.  We'll do that.
 8       Schal, you're waiting to complete a PSR?
 9          THE PROBATION OFFICER:  We've already completed the
10  initial report, Your Honor, and we have been holding the final
11  just to sort of see how everything comes out.
12          THE COURT:  Can I see the initial?
13          THE PROBATION OFFICER:  Yes, I will bring it down to
14  you.  And then do you mind just giving us permission to hold it
15  until you make a decision?
16          THE COURT:  That's fine.  Thank you, ma'am.
17       All right.  That will be all for today.  Thank you.
18     (Proceedings concluded at 3:10 p.m.)
19                          - - -
```

C E R T I F I C A T E

I, Lahana DuFour, do hereby certify that the foregoing is a true and correct transcript of the proceedings before the Honorable Michael H. Watson, Judge, in the United States District Court, Southern District of Ohio, Eastern Division, on the date indicated, reported by me in shorthand and transcribed by me or under my supervision.

s/Lahana DuFour
Lahana DuFour, RMR, CRR
Official Federal Court Reporter
September 21, 2023